IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| William B.,<br><br>    *Plaintiff*,<br><br>v.<br><br>Andrew Marshall Saul,<br>Commissioner of Social Security,<br><br>    *Defendant*. | Case No. 18 CV 50083<br><br>Magistrate Judge Lisa A. Jensen |

## MEMORANDUM OPINION AND ORDER

Plaintiff William B. brings this action under 42 U.S.C. § 405(g) challenging the partially favorable decision granting disability benefits. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner's decision is reversed, and this case is remanded.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed an application for disability benefits on July 31, 2012, alleging disability beginning December 26, 2007. R. 768. Plaintiff's date last insured is September 30, 2011. R. 769. His application was denied initially and upon reconsideration. R. 768. Following a hearing held on December 9, 2014, Administrative Law Judge (ALJ) Cynthia Bretthauer issued an opinion denying benefits on January 22, 2015. R. 13–27. Plaintiff appealed the decision, and, upon the Commissioner's agreed motion to remand, the case was remanded from the U.S. District Court for the Northern District of Illinois. R. 856. Another hearing was held by ALJ Bretthauer on October 5, 2017. R. 789. Plaintiff, represented by an attorney, appeared and testified. R. 791. Dr. Ronald Semerdjian, an impartial medical expert, and Susan Entenberg, an

impartial vocational expert (VE), also appeared and testified.  *Id.*  Pursuant to the District Court remand order, the Appeals Council directed the ALJ to obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments, determine whether Plaintiff's impairments met or medically equaled the criteria of any listing, particularly 1.07 (Fracture of an upper extremity), give further consideration to Plaintiff's residual functional capacity (RFC), evaluate Plaintiff's alleged symptoms and provide rationale in accordance with disability regulations pertaining to evaluation of symptoms, and obtain, if necessary, supplemental vocational expert testimony to determine what jobs exist in significant numbers for Plaintiff in the national economy.  R. 768.

On November 6, 2017, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled from December 26, 2007 to June 30, 2013.  R. 768–82.  Under the regulations, "when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984.  There is no evidence that the Appeals Council assumed jurisdiction of this case so the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B. Medical background**

The Court will briefly summarize Plaintiff's medical history that is relevant to this appeal. This section does not represent Plaintiff's entire medical history.  On December 26, 2007, Plaintiff suffered several injuries after a ten-foot fall off a roof.  R. 339.  X-rays of the right elbow showed a comminuted fracture of the proximal radius/radial head fracture.  R. 356.  A right radial head replacement in his elbow was performed on December 28, 2007.  R.  358.  A

February 2008 MRI showed a mild bulge at the L4-L5 and L5-S1 level of his spine but without significant stenosis or impingement neural elements. R. 326. In a March 2008 follow-up, Plaintiff complained of low back pain, numbness in the left thigh, and weakness in the right forearm. R. 300.

On August 8, 2008, an orthopedic surgeon performed surgery to release the intersection area between the thumb abductors and extensors and the second dorsal compartment radial wrist extensors. R. 329. On April 27, 2009, Plaintiff underwent a functional capacity evaluation (FCE) and was rated at constant lifting 10 pounds, frequent lifting 24 pounds, occasional lifting 50 pounds, and rarely lifting 100 pounds. R. 398. A July 29, 2009 x-ray of Plaintiff's hip revealed no evidence of fracture, dislocation, or gross bony destructive lesion. R. 345. However, a December 2009 MRI suggested a labral tear of his left hip joint. R. 454. On July 8, 2010, Plaintiff had a left hip arthroscopy, with ossicle removal and labral debridement, and an osteal chondroplasty of the femoral head/neck junction in the hip. R. 1041–43.

Due to a tear in his left wrist, Plaintiff had a left wrist arthroscopy to repair the tear with a synovectomy on August 24, 2009. R. 441. On September 20, 2011, Plaintiff had an arthrogram of the shoulder, which showed a SLAP (superior lateral anterior posterior) lesion, a split tear of biceps tendon, and a partial tear of supraspinatus. R. 540–42. On April 3, 2012, Plaintiff had several procedures on his right wrist: right wrist arthroscopy with debridement of the triangular fibrocartilage complex and ulnocarpal synovitis, ulnar (forearm bone) shortening osteotomy, and distal radius autograft to the osteotomy. R. 611. Due to a failure of consolidation of bone graft, a repair of the ulnar nonunion with iliac crest (from the hip) was performed on September 13, 2012. R. 614.

On June 13, 2013, Plaintiff had a left shoulder arthroscopy with extensive debridement. R. 706. On April 22, 2014, Plaintiff underwent a second FCE. R. 726. Plaintiff put out a high level of physical effort, and his pain reports (left hip, right elbow, wrist pain) were reliable. *Id.* The physical therapist, Michael Toman, who wrote the FCE opined that Plaintiff was unable to return to his pre-injury carpenter job because he did not meet the lifting, carrying, or pushing demands of his pre-injury work. However, Mr. Toman stated that Plaintiff could meet the demands for standing, walking, and sitting of his pre-injury job. But in the same FCE, Mr. Toman recommended that Plaintiff should be limited to light work for material handling and limit standing and walking to an "occasional" basis. R. 727.

**C. The ALJ's decision**

The ALJ went through a five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since December 26, 2017 when Plaintiff became disabled. R. 772. At step two, the ALJ found that Plaintiff had the following severe impairments from December 26, 2007 to June 30, 2013: right radial head fracture, status post surgery, with residual intersection syndrome; lumbar spinal arthralgias; left hip arthralgias; and obesity. *Id.* At step three, the ALJ found that Plaintiff's right radial head fracture status post surgery with residual intersection syndrome met the criteria of listing 1.07 (Fracture of an upper extremity) of 20 C.F.R. Part 404, Subpart P, Appendix 1 from December 26, 2007 to June 20, 2013. R. 773.

The ALJ began by summarizing Plaintiff's medical history and his subjective complaints. The ALJ gave great weight to Dr. Semerdjian's testimony at the hearing. R. 778. Dr. Semerdjian opined that Plaintiff met listing 1.07 through June 2013 (allowing several months

4

after the September 2012 surgery for healing). R. 777. Because the ALJ found that Plaintiff met listing 1.07 at step three and that Plaintiff was disabled from December 26, 2007 to June 30, 2013, the ALJ did not need to go on to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

After determining that Plaintiff was entitled to disability benefits, the ALJ then went through an eight-step analysis to determine if Plaintiff's disability continued or ended. *See* 20 C.F.R. § 404.1594(f). At step one, the ALJ already determined that Plaintiff was not performing substantial gainful activity. R. 772. At step two, the ALJ relied on Dr. Semerdjian's finding that Plaintiff no longer met or equaled the severity of an impairment beginning July 1, 2013. R. 778. At step three, the ALJ found that medical improvement occurred as of July 1, 2013. *Id.* At step four, the ALJ determined that the medical improvement was related to the ability to work because Plaintiff no longer had an impairment or combination of impairments that met or medically equaled the severity of a listing. *Id.* If the ALJ found that the medical improvement was not related to the ability to work, then the ALJ would have considered if an exception applied. But because the medical improvement was related to the ability to work, the analysis proceeded to step six, where the ALJ determined that Plaintiff's current impairments in combination were severe. *Id.* At step seven, the ALJ determined that Plaintiff's RFC was to perform light work except Plaintiff can: occasionally push and/or pull with the right upper extremity, frequently stoop, crawl, climb, crouch, and kneel, do no overhead reaching with right upper extremity with weights, and should avoid concentrated exposure to extreme cold. *Id.* The ALJ noted that an April 2014 FCE supported Dr. Semerdjian's opinion that Plaintiff did not have functional limitations with standing or walking. *Id.* The ALJ determined that Plaintiff was unable to perform past relevant work since July 1, 2013 because the ALJ limited Plaintiff to light work and Plaintiff's past work as a carpenter was heavy in exertion. R. 781. Finally, at step

5

eight, the ALJ found that beginning July 1, 2013, considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.*

## II. STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to see if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the reviewing court takes a very limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). An ALJ only needs to "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). But even when adequate record evidence exists to support the ALJ's decision, the decision will not be affirmed if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19–20 (N.D. Ill. Oct. 29, 2014).

### III. DISCUSSION

The ALJ issued a partially favorable decision granting disability benefits from December 26, 2007 through June 30, 2013. R. 778. Plaintiff appeals this decision and seeks disability benefits after June 30, 2013. In his motion for summary judgment, Plaintiff raises four primary arguments.: (A) the ALJ failed to properly evaluate Plaintiff's symptoms; (B) the ALJ mischaracterized the April 2014 functional capacity evaluation (FCE) report and failed to expressly give a weight to the opinion; (C) the ALJ failed to address the vocational expert's testimony on determinative issues; and (D) the ALJ failed to properly evaluate Plaintiff's obesity. Because arguments (A), (B), and (C) require a remand, the Court will address those arguments first. The ALJ's decision is reversed and remanded.

**A. Symptoms evaluation**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's symptoms. In determining whether Plaintiff is disabled, the ALJ must consider all the "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). While an ALJ will always attempt to find objective medical evidence to consider when determining if a claimant is disabled, the ALJ is not permitted to reject statements about the intensity and persistence of the pain or other symptoms solely because the available objective medical evidence does not substantiate the statements. 20 C.F.R. § 404.1529(c)(2); SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). When evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ must consider the following factors:

    (i) Your daily activities;
    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii) Precipitating and aggravating factors;

> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). These factors are also repeated in SSR 16-3p. A reviewing court will reverse the ALJ's credibility determination only if Plaintiff can show that it was "patently wrong," meaning the ALJ's decision "lacks any explanation or support[.]" *Elder*, 529 F.3d at 413–14 (internal citations and quotations omitted).

Here, the ALJ concluded that Plaintiff is "reasonably restricted to light exertional work" and stated that "the claimant's own subjective allegations have been considered but are not fully supported by the record." R. 780. However, that is the extent of the ALJ's analysis. There is no attempt whatsoever by the ALJ to identify what allegations were inconsistent with what evidence in the record. In fact, SSR 16-3p explicitly warns against the conduct that the ALJ exhibited in this case: "In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Social Security rulings are binding on the Social Security Administration and must be followed by the ALJ. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991). Despite the

SSR 16-3p requirement, the ALJ did not explain which of Plaintiff's allegations were credible, which were incredible, or provide specific reasons in support of the ALJ's findings. *See Williams v. Colvin*, No. 15 C 8106, 2016 WL 6804583, at *6 (N.D. Ill. Nov. 17, 2016) (remanded in part because the ALJ did not provide any reasoning as to why she found Plaintiff to be not credible); *Groneman v. Barnhart*, No. 06 C 0523, 2007 WL 781750, at *12 (N.D. Ill. Mar. 9, 2007) (remanded in part because the ALJ provided a *reason* for rejecting the plaintiff's allegations—his failure to seek treatment or take medications—but did not provide *reasoning*).

The ALJ should have addressed several of Plaintiff's subjective allegations. For example, Plaintiff cited numerous instances where he rated his pain an 8 out of 10 or higher and described his pain as throbbing, shooting, stabbing, sharp, burning, and aching. The Commissioner argues that these pain allegations are moot because they were from before July 1, 2013 when the ALJ already found that Plaintiff was disabled. However, as Plaintiff correctly points out in his reply brief, Plaintiff repeated many of these subjective allegations at the hearing and testified that they were still present or even worse during the hearing, which was held on October 5, 2017. Plaintiff testified that when he is merely sitting or standing, the "pain is always there[,]" and "[i]t never goes away." R. 799. And if he tried to do anything, the "pain only gets worse." *Id.* Plaintiff also testified that his pain feels worse than three years before the October 5, 2017 hearing. R. 800. In fact, he testified that the pain is "three times as bad." *Id.* The ALJ did not address these subjective allegations.

Further, the ALJ did not explain if Plaintiff's symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). In Plaintiff's April 2014 FCE, Mr. Toman, the physical therapist, found that "[o]verall test findings, in combination with clinical observations, suggest the presence of fully reliable reports of pain

9

and disability." R. 726. The FCE reported that Plaintiff's pain allegations were fully reliable, but the ALJ seemed to ignore this evidence when concluding that Plaintiff's subjective allegations were "not fully supported by the record." R. 780. The ALJ also should have considered several factors in 20 C.F.R. § 404.1529(c)(3) and SSR 16–3p when evaluating Plaintiff's credibility. For example, the ALJ briefly mentioned Plaintiff's daily activities such as personal grooming and some household tasks. R. 779. The ALJ also mentioned Plaintiff's physical therapy sessions and Plaintiff's medication, Norco and Celebrex, for pain management. *Id.* These are some examples that suggest support for Plaintiff's pain allegations, but the ALJ failed to state how these factors support or do not support Plaintiff's pain allegations. If she decided to reject Plaintiff's allegations, she must provide adequate reasoning, upon consideration of the factors listed in the regulations.

The Commissioner argues that the ALJ did in fact consider Plaintiff's symptoms, which "spanned four single-spaced paragraphs." Dkt. 13 at 5 (citing R. 778–79). The Court has examined those four single-spaced paragraphs and concludes that the ALJ merely summarized Plaintiff's testimony. A mere summary is not the same as meaningful analysis. *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *6 (N.D. Ill. July 9, 2018) (a summary of medical evidence with little analysis "prevents the Court from assessing the reasonableness of the ALJ's decision"); *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled."). By merely summarizing Plaintiff's subjective allegations, the Court is left to wonder *how* Plaintiff's subjective allegations are undermined by the evidence in the record. *See Williams*, 2016 WL 6804583, at *6 ("[T]he ALJ's analysis is largely a summary of the medical evidence without

10

explaining how it undermines Plaintiff's testimony."). The ALJ's cursory statement that Plaintiff's "subjective allegations have been considered but are not fully supported by the record[,]" R. 780, is "patently wrong," and therefore substantial evidence does not support the ALJ's adverse credibility determination.

Plaintiff includes a brief argument that the ALJ failed to develop the record by not asking Plaintiff about his condition after 2011. The Court notes that, at the hearing and in her decision, the ALJ focused on Plaintiff's subjective allegations between the years 2007 and 2011. While Plaintiff must establish disability before the date last insured in 2011, the ALJ must also consider Plaintiff's symptoms after July 1, 2013 to determine if Plaintiff's disability continues or ends. *See* 20 C.F.R. § 404.1594. Because the Court is remanding on other grounds and because the ALJ will have to reevaluate Plaintiff's symptoms, the Court need not determine whether the ALJ was patently wrong in failing to develop the record as to Plaintiff's symptoms after 2011. However, on remand, the ALJ should consider Plaintiff's subjective allegations after July 1, 2013 to determine if and when the disability ends.

This Court is mindful that this is the second remand on the symptoms evaluation issue. The ALJ here also issued the first opinion and was specifically instructed by the U.S. District Court on the first remand to "reassess plaintiff's subjective allegations of symptoms in accordance with 20 C.F.R. § 416.929 and SSR 16-3p[.]" R. 856. The same ALJ issued the second opinion and failed to follow those instructions. On this remand, the ALJ must explain which of Plaintiff's allegations were credible, which were incredible, or provide specific reasons in support of the ALJ's findings. The ALJ must evaluate Plaintiff's symptoms as required under 20 C.F.R. § 404.1529 and SSR 16-3p.

**B. Functional capacity evaluation**

Plaintiff argues that the ALJ did not properly evaluate the April 2014 FCE by failing to express what weight, if any, she gave to Mr. Toman, the physical therapist, and by mischaracterizing Mr. Toman's opinion.

SSR 06-03p provides for consideration of evidence from "other sources" to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2016). "Other sources" include non-acceptable medical sources, such as nurse practitioners, social workers, and therapists, as well as non-medical sources, such as educational personnel and relatives. *Id.* A physical therapist, such as Mr. Toman, is considered "other sources[.]" *See Guendling v. Colvin*, No. 13 C 3535, 2015 WL 6673833, at *4 (N.D. Ill. Oct. 30, 2015) ("[T]he regulations do allow evidence from 'other sources,' including physical therapists, to determine the severity of any impairment and its effect on the claimant's ability to work."). The ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2016). The regulations also state that the weighing factors in 20 C.F.R. § 404.1527[1] provide general guidance for evaluating opinions from "other sources." *Id.* at *4–5; *see also Sullivan v. Astrue*, 825 F. Supp. 2d 928, 940 (N.D. Ill. 2011) ("In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2): the length, nature, and extent of the treatment

---

[1] Because the claims were filed before March 27, 2017, evaluating opinion evidence is governed by 20 C.F.R. § 404.1527. Claims filed on or after March 27, 2017 is governed by 20 C.F.R. § 404.1520c.

12

relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the therapists's opinion.").

Here, the ALJ merely stated that the April 2014 FCE supported that "claimant did not have functional limitations with standing/walking." R. 778. However, in the FCE, Mr. Toman opined that Plaintiff should be limited to occasional—meaning, up to one-third of the day—standing and walking. R. 727. The ALJ does not explain this contradiction. The ALJ also fails to expressly give a weight to Mr. Toman's opinion or consider the factors in 20 C.F.R. § 404.152 and does not rely on other evidence to support the lack of standing or walking limitations. The ALJ does not give much of an analysis at all. The Commissioner claims that it is reasonable to infer that the ALJ intended to give the FCE great weight because the ALJ gave great weight to Dr. Semerdjian who relied on the FCE in his testimony. If great weight was accorded to the FCE, why did the ALJ omit Mr. Toman's important recommendation that Plaintiff be restricted to occasional standing and walking? The ALJ has an obligation to consider all the relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that suggests a disability finding. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (remanding in part because the ALJ only addressed portions of a medical opinion and did not consider all the relevant evidence).

By not expressing a weight given to the FCE and ignoring the clear recommendation that Plaintiff be limited to occasional walking and standing, the Court cannot follow the ALJ's reasoning. This failure to adequately evaluate Mr. Toman's opinion cannot be deemed harmless. An error is harmless only when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record . . . [and thus] remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

13

If, after an adequate evaluation of Mr. Toman's opinion, the ALJ finds that Plaintiff's RFC should include limitations to only occasional walking and standing, then Plaintiff would not be able to perform the full range of light work. *See* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). If Plaintiff is limited to only sedentary work, then Plaintiff would likely be disabled because he was 54 years old when the ALJ issued her second opinion and Plaintiff did not appear to have any transferable skills. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.01(g) ("Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains.").

On remand, the ALJ should independently evaluate the April 2014 FCE in accordance with SSR 06-3p, and its effect on Plaintiff's RFC (namely, if occasional standing and walking limitations should be included).[2] This may also affect the ALJ's evaluation of Dr. Semerdjian's testimony.

---

[2] The Court notes that Mr. Toman was not provided a description of Plaintiff's job and therefore compared Plaintiff's exertion to the Dictionary of Occupational Titles (DOT) definition of CARPENTER, which requires medium work. *See* DOT 860.381-022 CARPENTER. Medium work requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday[.]" SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Additionally, unbeknownst to Mr. Toman, the ALJ determined that Plaintiff's past work was actually "heavy in exertion" as performed. R. 781. Heavy work does not include an explicit standing or walking requirement but "[i]f someone can do heavy work, . . . he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567(d). In other words, heavy work would also require standing or walking at least 6 hours in an 8-hour workday. Had Mr. Toman known that Plaintiff's past job required standing or walking for 6 hours in an 8-hour workday, Mr. Toman would have opined that Plaintiff would not be able to meet the standing and walking requirements of his pre-injury job. While not remanding on this issue, the ALJ should consider this possible mistake when evaluating the April 2014 FCE.

**C. Non-exertional limitations and VE testimony**

Plaintiff contends that the ALJ erred by not considering Plaintiff's alleged non-exertional limitations and the effect of those non-exertional limitations on his RFC for light work. The regulations and case law require that the ALJ consider the combined effects of all of Plaintiff's ailments, regardless of whether the ailment, considered separately, would be sufficiently severe. 20 C.F.R. § 404.1523; *Clifford*, 227 F.3d at 873.

Here, the ALJ determined that Plaintiff had the RFC to perform light work except Plaintiff can occasionally push and/or pull with the right upper extremity, frequently stoop, crawl, climb, crouch, and kneel, do no overhead reaching with the right upper extremity with weights, and should avoid concentrated exposure to extreme cold. R. 778. The ALJ, however, did not make any mention of or any determination regarding Plaintiff's alleged non-exertional limitations (namely, Plaintiff's need for breaks, off-task time, absences, and his irritability and temper) and the effect of those non-exertional limitations on his RFC for light work. Plaintiff testified to these non-exertional limitations at the October 5, 2017 hearing. Plaintiff testified that he could not sit or stand for long period of time because the pain was always there. R. 799. Plaintiff testified that he had to switch between sitting up and laying down throughout a car ride to Florida. R. 817. Plaintiff also testified as to his poor concentration. On a bad day, he could not follow television shows or complete simple tasks like walking the dog for two blocks. R. 813. Plaintiff also testified that he can "snap and . . . get real angry easy and fast[.]" R. 69.

On cross-examination, the VE testified that an individual who missed work one day per week, was combative or insubordinate multiple times per week, left work early one to two times per week for one to two hours, had to take two extra 20 minute breaks to stretch or take pain medication, or was off-task more than 15% of the day due to poor concentration would not be

15

able to sustain employment. R. 840–41. The VE clearly stated that a person who needs frequent breaks, was unable to concentrate, and can quickly get angry at colleagues would eliminate the range of light work Plaintiff had the exertional capacity to perform. The ALJ was required to consider these non-exertional limitations, but she failed to do so.

The Commissioner responds by stating that given the lack of corroborating support, the ALJ was not obligated to adopt Plaintiff's testimony. Of course, an ALJ is certainly not obligated to adopt Plaintiff's testimony, but the ALJ must *consider* Plaintiff's non-exertional limitations and determine if there is any effect on Plaintiff's RFC. The Northern District of Illinois has previously remanded cases where, like in this case, the ALJ did not adequately address a plaintiff's lapses in concentration, the need for off-task time, or other non-exertional limitations and ignored the VE's testimony that such limitations would preclude employment for the plaintiff. *Kukec v. Berryhill*, No. 16 CV 9805, 2017 WL 5191872, at *4 (N.D. Ill. Nov. 9, 2017) (remanding where the ALJ failed to consider off-task time after the VE testified that an individual who was off-task 20% of the time would be unemployable); *Bailey v. Barnhart*, 473 F. Supp. 2d 842, 851 (N.D. Ill. 2006) (finding error where the ALJ did not sufficiently consider the plaintiff's mental impairments and failed to address the VE's testimony that the plaintiff's possible mental impairments would preclude her from working); *Griffin v. Massanari*, No. 00 C 7109, 2001 WL 1064476, at *10 (N.D. Ill. Sept. 13, 2001) (remanding because the ALJ did not expressly consider the plaintiff's limitations of depression and lack of concentration and ignored significant portions of the VE's testimony that significant lapses in concentration would eliminate the range of light work that the plaintiff could perform). The ALJ failed to address or evaluate whether Plaintiff's need for frequent breaks, absences, poor concentration, and temper would impact his ability to perform the full range of light work. Without such a discussion, the

16

Court cannot determine whether these non-exertional limitations would affect Plaintiff's RFC. Given the VE's testimony that a person with Plaintiff's non-exertional limitations would eliminate the range of light work Plaintiff had the exertional capacity to perform, the ALJ's failure is reversible error. *See Connor v. Shalala*, 900 F. Supp. 994, 1004 (N.D. Ill. 1995) ("Since the VE's testimony in this case was determinative to the ALJ's decision of 'not disabled,' her failure to address the VE's concessions in cross-examination must be remedied."). On remand, the ALJ should consider these non-exertional limitations and the effect on Plaintiff's RFC.

**D. Obesity**

Finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's obesity. Specifically, the ALJ did not explain how his obesity, in combination with his other impairments, affected her ability to work. In accordance with SSR 02-1p, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). "The combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.*

Here, the ALJ was acutely aware of Plaintiff's obesity. She recognized that Plaintiff is obese. He is six feet one inch tall and weighs 295 pounds, corresponding to a body mass index (BMI) of 38.9. The ALJ identified obesity as one of Plaintiff's severe impairments. R. 772. The ALJ explicitly stated that she considered Plaintiff's obesity in determining his RFC and whether he meets or medically equals a listing pursuant to SSR 02-1p. R. 772. The ALJ first found that Plaintiff's obesity did not exacerbate his other impairments sufficiently to meet or medically equal a listing. R. 773. Later, the ALJ found that "[g]iven the claimant's right arm impairments

as well as his lumbar spine arthralgias, left hip impairment and *obesity*, it is reasonable that the claimant would have difficulty with some exertional activities including lifting, carrying, standing, and walking. He is therefore restricted to light exertional work." R. 780 (emphasis added). Substantial evidence supports that the ALJ adequately considered Plaintiff's obesity. In *Shumaker v. Colvin*, the Seventh Circuit found that the ALJ properly considered the plaintiff's obesity because the ALJ concluded that the obesity was a severe impairment, analyzed the effect of that impairment on the claimant's RFC by referencing the Social Security Administration's guidance for obesity, and incorporated several limitations into the RFC. *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). The ALJ here included the same analysis with Plaintiff's obesity. The ALJ found Plaintiff's obesity as a severe impairment. R. 772. The ALJ analyzed the effect of that severe impairment and specifically referenced SSR 02-1p, the Social Security Administration's guidance on obesity. R. 772–73, 780. Finally, the ALJ incorporated several limitations to Plaintiff's RFC as a result of his obesity and other impairments. R. 778.

Plaintiff chiefly relies on *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004), where the ALJ erroneously treated the claimant's obesity as merely an aggravating factor and suggested that the obesity is a self-inflicted disability that does not entitle one to benefits, and *Gentle v. Barnhart*, 430 F.3d 865 (7th Cir. 2005), where the ALJ did not even consider the claimant's obesity. Those cases are dissimilar to the present case. Here, the ALJ explicitly considered Plaintiff's obesity and identified it as a severe impairment unlike in *Gentle*. The ALJ never minimized the effect of Plaintiff's obesity or suggested it was a self-inflicted disability like in *Barrett*. Therefore, *Barrett* and *Gentle* are distinguishable from the present case. Substantial evidence supports that the ALJ adequately considered Plaintiff's obesity.

Moreover, even if the ALJ did not consider how Plaintiff's obesity affects his ability to work, that error would be harmless because the ALJ predicated his decision primarily on Dr. Semerdjian's opinion which discussed Plaintiff's obesity. During the October 5, 2017 hearing, Dr. Semerdjian specifically stated the following in his testimony: "And he's also carrying a lot of weight. He's not morbidly obese, but he is significantly obese." R. 834. The Seventh Circuit has rejected arguments like Plaintiff's argument where the ALJ predicated the decision upon opinions of physicians who did discuss the claimant's weight. *See Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (finding that the ALJ implicitly considered the claimant's obesity because he predicated his decision upon the opinions of physicians who did discuss the weight).

## IV. CONCLUSION

For the reasons listed in this opinion, Plaintiff's motion for summary judgment [10] is granted, the Commissioner's motion [13] is denied. The decision of the Commissioner is reversed and remanded. On remand, the ALJ should perform three steps. First, the ALJ should evaluate Plaintiff's symptoms, including symptoms after July 1, 2013, and consider the factors laid out in 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p. Second, the ALJ should evaluate the April 2014 FCE in accordance with SSR 06-3p and determine if standing and walking limitations should be included in Plaintiff's RFC. Third, the ALJ should evaluate Plaintiff's alleged non-exertional limitations and the effect of those non-exertional limitations on Plaintiff's RFC. If necessary, the ALJ should obtain supplemental VE testimony to determine what jobs exist in significant numbers for Plaintiff in the national economy.

Date: September 19, 2019   By: _/s/ Lisa A. J_____
Lisa A. Jensen
United States Magistrate Judge